IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FILED
APR 2 9 2013
CLERK, US DISTRICT COURT
NORFOLK, VA

KIM MCGRIFF.,

    Plaintiff,

v.                                                       Civil Action No. 2:13cv152

GRAMERCY CAPITAL CORP., et al.,

    Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants Gramercy Capital Corporation ("Gramercy") and First States Investors 3500 LLC's ("First States") (collectively, "Defendants") Motion to Dismiss.[1] Doc. 8. Defendants argue that Count Two of Plaintiff Kim McGriff's ("McGriff" or "Plaintiff") Complaint, Doc. 1, Ex. 1—which puts forth a theory of recovery based on the doctrine of res ipsa loquitor—fails to state a claim. After examining the Motion, the associated briefs, and the Complaint, the Court finds that oral argument is unnecessary because the facts and legal contentions are adequately presented and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons explained herein, the Court hereby GRANTS Defendants' Motion to Dismiss.

---

[1] This Motion was made by only two of the five defendants. The other defendants include Otis Elevator Company, CBRE Group, Inc., and CB Richard Ellis of Virginia, Inc. The last two defendants—CBRE Group, Inc. and CB Richard Ellis of Virginia, Inc.—assert that they are wrongly named and the correct entity is CBRE, Inc. formerly known as CB Richard Ellis, Inc. There is a pending motion by Plaintiff to amend the complaint to relate back to the proper CBRE defendant, Doc. 22, which is not yet ready for adjudication.

1

# I. BACKGROUND

## A. Factual Allegations[2]

On February 9, 2011, Plaintiff boarded the elevator on the twelfth floor of the tower at One Commerce Place, Norfolk, Virginia, ("the Tower") intending to travel to the thirteenth floor. Unluckily, after Plaintiff had boarded the elevator, it suddenly and violently dropped a number of floors, causing significant personal injury to Plaintiff. Compl. ¶¶ 2, 17.

The Tower is owned by First States, which is in turn owned by Gramercy. Id. at ¶¶ 2, 3, 7; see also Doc. 23 at 1. Defendants leased a portion of the Tower to Bank of America (which is not party to this suit). Id. at ¶ 8 Doc. 23 at 1. Bank of America then contracted with CBRE, Inc., for the management and maintenance of the Tower. Id. at ¶ 9; see also supra note 1. CBRE, Inc. contracted with Defendant Otis Elevator for the provision of management and maintenance services for the Elevator. Id. at ¶ 10; Doc. 23 at 2.

## B. Procedural History

Plaintiffs filed their Complaint in the Circuit Court for the City of Norfolk, and Defendant removed the case to this Court on March 22, 2013. Doc. 1. On March 29, 2013, Defendants moved to dismiss Count Two of Plaintiff's Complaint for failure to state a claim. Docs. 8, 9. Plaintiff responded in opposition on April 9, 2013, Doc. 23, and Defendant replied in support on April 12, 2013. Doc. 29. The matter is now ready for adjudication.

# II. LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim. See Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994); see FED. R. CIV. P 12(b)(6). In considering such

---

[2] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motion to Dismiss. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

a motion, a court should accept as true all well-pleaded allegations and view the claim in the light most favorable to the claimant. See De Sole v. United States, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing Jenkins v. McKeithen, 395 U.S. 411, 421 (1969)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (abrogated by Harlow v. Fitzgerald, 457 U.S. 800 (1982)).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). Indeed, the legal framework of a claim must be supported by factual allegations that "raise a right to relief above the speculative level." Id. at 1965. In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court expanded upon Twombly by articulating the two-pronged analytical approach to be followed in any Rule 12(b)(6) test.

First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. Id. at 1951. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. Id. (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." Id. at 1950–51. The plausibility standard demands more than a showing of "a sheer possibility that a defendant has acted unlawfully." Id. at 1949. That is, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

3

that the defendant is liable for the misconduct alleged." Id. at 1949. "In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (internal citations omitted).

### III. ANALYSIS

Plaintiff alleges in Count Two of the Complaint that Defendants are liable for her injuries on a theory of res ipsa loquitur. In Virginia "a plaintiff may invoke the res ipsa loquitur doctrine to establish a breach of duty owed him by a legal inference of negligence from proved facts." Easterling v. Walton, 208 Va. 214, 217, 156 S.E.2d 787, 790 (1967). For the doctrine to apply: (1) the instrumentality which caused the injury must have been in the exclusive possession, control, or management of the defendant; (2) the injury would not ordinarily have occurred if the defendant had used due or proper care; (3) and the defendant has exclusive knowledge of the way the instrumentality was used—which is to say that the evidence of the cause of the injury is accessible to the defendant and inaccessible to the plaintiff. Lewis v. Carpenter Co., 252 Va. 296, 300, 477 S.E.2d 492, 494 (1996) (citing Stein v. Powell, 203 Va. 423, 426, 124 S.E.2d 889, 891 (1962)); Easterling, 208 Va. at 217, 156 S.E.2d at 790 (citing Danville Com. Hospital v. Thompson, 186 Va. 746, 757–58, 43 S.E.2d 882, 886–87, 173 A.L.R. 525, 531 (1947)); see also May v. Dover Elevator Co., 845 F. Supp. 377, 382 (E.D. Va. 1994) aff'd, 40 F.3d 1244 (4th Cir. 1994) (adding the qualification that the plaintiff must not be at fault). The doctrine

> may be utilized only when the circumstances of the incident, without further proof, are such that, in the ordinary course of events, the incident could not have happened except on the theory of negligence. In such case, the doctrine raises a presumption or permits an inference of negligence. It is not to be applied, however, when evidence is available.

Lewis, 252 Va. at 300, 477 S.E.2d at 494 (citing Beer Distrib., Inc. v. Winfree, 190 Va. 521, 525, 57 S.E.2d 902, 904 (1950); Cooper v. Horn, 248 Va. 417, 421, 448 S.E.2d 403, 405 (1994)).

4

The stringent nature of the elements reflects that Virginia has "limited and restricted [the doctrine] to a very material extent." Id. at 300, 477 S.E.2d at 494.

*1. Whether an Elevator Fall is the Type of Accident That Occurs Absent Negligence*

There is adequate Virginia authority to support the notion that a passenger elevator does not normally fall absent negligence. See Murphy's Hotel v. Cuddy's Adm'r, 124 Va. 207, 97 S.E. 794, 797–98 (1919) (upholding the application of res ipsa loquitur in the fall of an elevator in a hotel).[3] Defendant cites Dixie Peanut Co. v. Lewis' Adm'x for the assertion that "[t]he doctrine of res ipsa loquitur is not applicable to all cases involving a falling elevator." Doc. 29 (citing Dixie Peanut Co., 118 Va. 577, 88 S.E. 72 (1916)). There, an employee was killed while operating a freight elevator. Id. The evidence at trial showed that the cable supporting the elevator had broken, but that no cause for its breaking had been adduced, and the court stated further:

> The uncontradicted evidence in the instant case shows that the elevator in question was a first-class machine, as good as any freight elevator on the market, and was in general use. It further shows that it was regularly inspected by an expert who had no connection with the defendant three or four times a year, to see that it was in good order, and that this expert examined it within a few weeks prior to the accident. It is further shown that an intelligent employ[ee] of the defendant, who was acquainted, from long experience, with the construction and operation of elevators, examined it two or three times a week to see that it was in good working condition. The result of these investigations was that up to the time of the accident no defect was discovered, but the elevator was found to be in good working order.

Id. at 73. The court held that, under those circumstances—where Defendant had provided substantial evidence about its due care and the accident—a jury instruction on res ipsa loquitur was error. Accordingly, Defendant is right that res ipsa loquitur does not automatically apply to

---

[3] Defendants further argue that an elevator fall could be caused by a product defect or some other thing outside their control. However "[t]he plaintiff is not required to exclude every possibility that the injury might have been caused through some means for which the defendant is not responsible. [] The test is whether the circumstances are such as would satisfy a reasonable and well-balanced mind that the accident resulted from the negligence of the defendant. The testimony need not exclude everything which the ingenuity of counsel may suggest as having possibly caused or contributed to the injury." Danville Cmty. Hosp., 186 Va. at 762, 43 S.E.2d at 889. In light of Murphy's Hotel, Plaintiff has adequately alleged this element.

5

elevator falls when there is evidence about the accident and Defendant's care; but at this juncture—and on a Rule 12(b)(6) Motion where there is no evidence for the Court to consider—it would be premature to dismiss Plaintiff's claim on this ground.[4] Accordingly, Plaintiff has adequately alleged the second element. See Compl. ¶ 40.

*2. Exclusive Possession, Control, or Management*

The majority of the parties' argument focuses on the first element and Plaintiff's allegation that the elevator "was in the joint and exclusive control of all Defendants." Compl. ¶ 39. Plaintiff's assertion that multiple corporate entities jointly exercised exclusive control appears to be novel in Virginia. Plaintiff recounts that "Virginia courts have never specifically articulated what is meant by 'exclusive control'" and "'[w]hether the Virginia Supreme Court will re-examine and reassess what it means by 'exclusive control' in light of how a majority of contemporary American courts have addressed the issue remains to be seen.'" Doc. 23 at 6 (quoting Va. Prac. Tort and Personal Injury Law § 3:42). According to Plaintiff, the majority of courts—in a trend of making exclusive control less critical to a res ipsa loquitur claim—hold that exclusive control can be joint among defendants. Doc. 23 (citing 59 A.L.R. 4th, 201 § 30(a)).[5] Further, "it is for the trier of the facts to say whether either or both [defendants] had control." Id.

Plaintiff has not demonstrated that Virginia is among this purported majority. While Virginia will permit a case against multiple defendants to go forward to determine which defendant had control, there is no precedent for permitting an action to proceed on the basis of joint exclusive control. See Dickerson v. Fatehi, 253 Va. 324, 328, 484 S.E.2d 880, 882 (1997) (remanding for further development of the record to see which of two defendants had exclusive

---

[4] It is also worth noting that Murphy's Hotel involved a passenger elevator to which the high duty of care owed by a common carrier applied, whereas Dixie Peanut Co. involved a freight elevator operated by an employee to whom a standard duty of care applied. This distinction matters because, if a duty of care is higher, there are more failures that could be a breach of the duty, so a presumption of negligence is less likely to result in undue liability for the carrier.
[5] However, it appears that many courts still require that the joint control be exclusive, that is: only the joint defendants, and no others, have control. See 57B Am. Jur. 2d Negligence § 1232.

possession and control of the instrumentality at the time of the negligence); Dover Elevator Co., 845 F. Supp. at 382 (dismissing a res ipsa loquitur claim against a defendant elevator maintenance company which discovery showed was only responsible for a portion of the elevator maintenance).

Accordingly, because the Virginia Supreme Court has said that "[t]he restricted nature of the doctrine [of res ipsa loquitur] is implicit in a statement of its elements," and those elements include that the instrumentality "must be in the exclusive possession of or under the exclusive management of the defendant," this Court will not extend Virginia law to permit joint exclusive control.[6]

### *3. Whether Plaintiff's Claim Can Go Forward Against Any One Defendant As Alleged*

Plaintiff argues that it should be permitted to conduct discovery because "[w]hen it is unknown which party had exclusive control[,] . . . a res ipsa loquitur claim is the only method to determine the same." Doc. 23 at 6. Plaintiff correctly states that, in pursuing a res ipsa loquitur claim, she should be permitted to conduct discovery to see which, if any, defendant had exclusive control. See Dickerson v. Fatehi, 253 Va. at 328, 484 S.E.2d at 882. But Plaintiff has not alleged that one of the Defendants had exclusive control, so as to entitle her to discover which one; she has alleged that they all have "joint and exclusive control." Compl. ¶ 39. That theory is not available under Virginia law, and so Count Two fails to state a claim.

### IV. CONCLUSION

Because Plaintiff alleges res ipsa loquitur via "joint and exclusive control"—a theory Virginia has not adopted—she has failed to state a claim under Virginia law. Accordingly,

---

[6] It is also worthwhile to note that in Danville Cmty. Hosp. v. Thompson, 186 Va. 746, 43 S.E.2d 882 (1947), the Virginia Supreme Court expressed disagreement with a California case which permitted a theory of joint exclusive control among multiple defendants. See Id. at 761, 43 S.E.2d at 888 (citing Ybarra v. Spangard, 25 Cal. 2d 486, 154 P.2d 687 (1944)). In Danville, the Virginia Supreme Court adopted the narrow notion from Ybarra that a plaintiff need not specify which of a single defendant's employees was responsible for negligence when all employees and instrumentalities were under the single defendant's exclusive control. Id.

Defendants' Motion is **GRANTED** and Count Two of Plaintiff's Complaint is **DISMISSED** with leave to amend within eleven (11) days, if Plaintiff be so advised.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

_____
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: April 29, 2013